UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DE'VON L. WALKER,

                    Plaintiff,

        v.                                    Case No. 16-cv-1485-pp

PAUL LUDVIGSON, *et al.*,

                    Defendants.

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO
PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 4) AND
SCREENING PLAINTIFF'S COMPLAINT**

        The plaintiff, a Wisconsin state prisoner who is representing himself, filed

this lawsuit under 42 U.S.C. §983, dkt. no. 1, along with a motion for leave to

proceed without prepayment of the filing fee, dkt. no. 2. This order resolves

that motion and screens the plaintiff's complaint.

   I.      Motion for Leave to Proceed without Prepayment of the Filing Fee

        The Prison Litigation Reform Act (PLRA) applies to this case because the

plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The

PLRA allows a court to give an incarcerated plaintiff the ability to proceed with

his lawsuit without prepaying the case filing fee, as long as he meets certain

conditions. One of those conditions is that the plaintiff pay an initial partial

filing fee. 28 U.S.C. §1915(b).

        On November 30, 2016, the court ordered the plaintiff to pay an initial

partial filing fee of $4.83 on or before December 23, 2016. Dkt. No. 6. The

1

plaintiff failed to pay the fee on time, and on January 6, 2017, the court entered an order to show cause. Dkt. No. 7. The court received the initial partial filing fee on January 9, 2017. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee, and will require the plaintiff to pay the remainder of the filing fee over time as explained at the end of this decision.

II.     Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v.

Village of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### A.    The Plaintiff's Allegations

The plaintiff's claims relate to two documented suicide attempts by the plaintiff and the way that staff members handled them, both before and after the attempts. Dkt. No. 1 at 5.

### 1.    *First Suicide Attempt*

On November 5, 2014, at approximately 3:00 p.m., the plaintiff got the attention of defendant Derek Dekeyser, the range officer on the plaintiff's segregation unit. Id. The plaintiff told Dekeyser that he was depressed and suicidal and was having suicidal thoughts. Id. at 5-6. Dekeyser said he would get the plaintiff some help. Id. at 6. Dekeyser returned to the plaintiff's cell about an hour later with defendant correctional officer Randy Gerritson, defendant supervising officer Kyle Tritt, and defendant psychological associate Paul Ludvigson. Id. at 6-7. The group spoke to the plaintiff for several minutes, and the plaintiff told them all that he was suicidal and having suicidal thoughts. Id. at 7. The group debated, and ultimately concurred in a decision that the plaintiff could stay in his current cell and that he did not need further treatment at that time. Id.

At approximately 4:30 p.m., the plaintiff intentionally consumed over sixty pills, including acetaminophen and ibuprofen. Id. The plaintiff continued to take pills for more than an hour, and ultimately ingested more than eighty pills. Id. Sometime after 6:00 p.m., the plaintiff became extremely ill; he was vomiting profusely. Id. When Dekeyser made a wellness check, he noticed the plaintiff's condition, and asked the plaintiff what was wrong. Id. The plaintiff told Dekeyser that he had ingested more than eighty pills. Id. The plaintiff also told Dekeyser that he had swallowed a screw and multiple staples. Id. Dekeyser radioed for assistance, and Gerritson and Tritt came to the plaintiff's cell a couple of minutes later. Id. They placed the plaintiff in restraints and took him to the restrictive housing unit for a medical evaluation and eventual psychological evaluation. Id.

When the plaintiff arrived at the restrictive housing unit, he was strip searched, placed in a smock and placed in mechanical restraints. Id. He was taken to the nurse's station, with his wrists handcuffed behind his back and shackles on both ankles, to be medically evaluated. Id. Defendant Nurse K. DeYoung physically examined the plaintiff and took a blood sample. Id. at 7-8.

After the physical examination, defendant correctional officer Andrew Moungey, correctional officer Weary and Tritt led the plaintiff to a holding cell; DeYoung followed behind. Id. at 8. They attached the plaintiff's handcuffs to the door of his holding cell. Id. Moungey asked the plaintiff to kneel so he could remove the plaintiff's ankle restraints. Id. The plaintiff attempted to kneel, but he could not without injuring himself because the strap attaching the

handcuffs to the cell door was too short. Id. The plaintiff asked Moungey for help getting to his knees because he could not do it himself. Id.

Moungey forcefully pushed the plaintiff with his full weight and held the plaintiff aggressively against the holding cell door with his full weight on the plaintiff. Id. Moungey also forcefully and painfully twisted and jerked the plaintiff's left hand and wrist into a painful and unnatural position. Id. This injured the plaintiff's left wrist and caused the plaintiff to hyperventilate. Id.

Weary (who is not named a defendant) and DeYoung were present when Moungey used force; Tritt had just started to leave. Id. Tritt immediately returned, and witnessed the whole incident. Id. DeYoung immediately treated the plaintiff for his hyperventilation, but not for his wrist pain. Id.

At approximately 7:10 p.m., the plaintiff was placed into a psychological observation room, even though DeYoung knew that the plaintiff had ingested a number of pills, a screw and several staples. Id. A second blood draw at approximately 10:00 p.m. revealed an abnormally high level of acetaminophen. Id. Even with this information, DeYoung refused to send the plaintiff to an outside hospital for treatment. Id. at 9. Instead, she offered the plaintiff antacid. Id.

Between 9:30 p.m. and 10:30 p.m., the plaintiff pressed the medical emergency intercom button Id. He told a John Doe correctional officer that he needed further medical assistance, but John Doe 1 told the plaintiff that he already had been seen by the nurse and that he was "fine." Id.

During the overnight hours, the plaintiff used the medical emergency intercom button to ask a Jane Doe correctional officer for medical assistance several times; he even pled with her. Id. John Doe 2, another correctional officer working third shift, also refused to provide medical assistance. Id. These defendants allowed the plaintiff to "suffer in pain so unbearable that the plaintiff on at least two times during the night lost consciousness." Id. Even after waking up covered in his own urine and vomit, the plaintiff found himself too weak and in too much pain to move out of his own filth or make any attempt to clean it up. Id.

In the early morning hours of November 6, 2014, John Doe 3, a supervising officer, looked in on the plaintiff as part of a wellness check. Id. The plaintiff asked John Doe 3 for medical assistance, but none was given. Id.

The plaintiff finally was sent to an outside hospital at approximately 6:00 a.m. on November 6, 2014—twelve to thirteen hours after his original overdose. Id. Staff in the emergency room at Waupun Memorial Hospital admitted the plaintiff, and he spent three days in the intensive care unit at the hospital. Id. at 10.

### 2. *Second Suicide Attempt*

While the plaintiff was at the hospital, a defendant John Doe 4 was sent to the plaintiff's segregation cell to remove the rest of the plaintiff's medications, but he did not do so. Id.

When the plaintiff returned to the prison, he met with Ludvigson. Id. The plaintiff told Ludvigson that he still had suicidal thoughts, but that he had no

intention and did not believe he would act on them. Id. The plaintiff was released from psychological evaluation and returned to his cell in segregation at approximately 12:30 p.m. on November 10, 2014. Id.

That afternoon, the plaintiff told defendant correctional officer Jon Williams at least twice that he was against feeling suicidal. Id. The plaintiff received no medical or psychological attention after these statements. Id. At approximately 7:00 p.m., the plaintiff ingested the sixty prescription pills that remained in his segregation cell. Id. He then told Williams that he had taken the remaining sixty pills, and Williams radioed for a supervisor. Id. at 10-11.

Defendant correctional officer Corey Bradley and defendant Tritt, along with Jeremiah Larsen and McQuown (not named as defendants), reported to the plaintiff's cell. Id. at 11. The plaintiff discussed the situation with the officers; he then was restrained and escorted to the Health Services Unit (HSU) by Larsen, Williams and McQuown. Id. Nurse clinician Donna Larson (not named as a defendant) treated the plaintiff briefly; he then was immediately transported back to the hospital, where he spent another three days in the intensive care unit. Id.

Williams wrote a conduct report for the plaintiff for misuse of medication, stemming from the plaintiff's second suicide attempt. Id. The plaintiff had a due process hearing before defendant Corey Sabish, and the plaintiff admitted that he had attempted to commit suicide and explained his psychological state at the time. Id. Sabish found the plaintiff guilty of misuse of medication even though the conduct report stemmed directly from the plaintiff's suicide

attempt. Id. According to the plaintiff, Williams and Sabish were deliberately indifferent to the plaintiff's mental state and caused him "supreme emotional as well as mental distress" when they wrote the conduct report and found him guilty. Id.

**B.    Analysis**

"A §1983 claim based upon a violation of the Eighth Amendment has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006) (citing Matos ex rel. Matos v. O'Sullivan, 335 F.3d 553, 556 (7th Cir. 2003). "Where the harm at issue is suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded that risk." Id.

The Eighth Amendment also prohibits deliberate indifference to a prisoner's serious medical needs, as well as the use of excessive force. "To state an Eighth Amendment medical claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015). "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the

core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Gomez v. Randle, 680 F.3d 859, 864 (7th Cir. 2012) (quoting Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)).

The plaintiff's complaint states Eighth Amendment claims against each of the named defendants, both those identified and those named as Jane Doe or John Does. After the named defendants are served and have filed answers to the plaintiff's complaint, and after the court enters a scheduling order, the plaintiff may use discovery (interrogatories and requests for production of documents) to identify those defendants currently named as Jane Doe and John Does 1-4.

III.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 4.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $345.17 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). Please identify the payments by the case name and number.

The court will send a copy of this order to the officer in charge of the agency where the inmate is confined.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on the following state defendants: Paul Ludvigson, Derek Dekeyser, Randall Gerritson, Kyle Tritt, K. DeYoung, Andrew Moungey, Corey Sabish, Jon Williams and Corey Bradley.

The court also **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, the defendants who are served shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this order.

The court **ORDERS** that the parties ***may not*** begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he must submit all correspondence and legal material to:

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Court House
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

The court advises the plaintiff that failure to file pleadings or other documents by the dates the court sets may result in the dismissal of his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 11th day of September, 2017.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**