UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DE'VON L. WALKER,

        Plaintiff,

v.                                     Case No. 16-cv-1485-pp

PAUL LUDVIGSON, *et al.*,

        Defendants.

---

**ORDER GRANTING, *NUNC PRO TUNC*, DEFENDANTS' MOTION FOR AN EXTENSION OF TIME TO FILE DISPOSITIVE MOTIONS (DKT. NO. 20), DENYING PLAINTIFF'S REQUEST THAT THE COURT APPOINT COUNSEL (DKT. NO. 36) AND ORDERING PLAINTIFF TO RESPOND TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BY FEBRUARY 15, 2019**

---

On May 11, 2018, the defendants filed a motion for summary judgment. Dkt. No. 20. The plaintiff's response to that motion was due in mid-June 2018; he never responded. On July 9, 2018, the court ordered the plaintiff to either respond to the motion or explain why he could not. Dkt. No. 35. On August 3, 2018, the court received the plaintiff's explanation. Dkt. No. 36. He says that he is suffering from the "significant onset" of several mental illnesses and disorders; he says that in the past months, he had attempted to commit suicide on more than one occasion and that he was undergoing "strenuous inpatient" at the Wisconsin Resource Center. Id. at 1. The plaintiff said that he lacked the "mental fortitude" to respond to the motion—he even says that he had two psychotic episodes triggered by reading the summary judgment motion. Id. at 1-2. He says that the motion caused him to have intense panic

1

attacks, one of which caused a suicide attempt. Id. at 2. He says that he can't argue his side of the case without triggering trauma. Id. The plaintiff asked the court either to dismiss the case without prejudice, so that he could resume it when he was stable enough to handle it, or that the court appoint counsel to represent him, or to facilitate mediation. Id. at 2. The plaintiff attached documentation verifying his allegations of suicide attempts and treatment, as well as verifying that he was admitted to WRC June 7, 2018. Dkt. No. 36-1. The court notes that the Department of Corrections' inmate locator web site also shows that the defendant has been in a supervised living facility (likely the WRC) since June 7, 2018. https://appsdoc.wi.gov/lop/home.do (last visited December 13, 2018).

The court regrets that the plaintiff has suffered from his illnesses over the past year. Regarding the plaintiff's first request—that the court dismiss his case without prejudice so that he can file it again when he is up to it—the court notes that the plaintiff's complaint involves events that happened in early November 2014—over four years ago now. When the plaintiff filed his complaint on November 4, 2016, the Wisconsin statute of limitations for filing personal injury claims was six years. Wis. Stat. §893.53 (effective through April 4, 2018). As of April 2018, however, the statute now reads, "An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 3 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred." Wis. Stat. §893.53. Under federal law, a claim for deliberate indifference

2

accrues "when the plaintiff knows of his physical injury and its case;" the "statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known." Devbrow v. Kalu, 705 F.3d 765, 768 (7th Cir. 2013). If the court were to dismiss the plaintiff's case today—even without prejudice—it is possible that the statute of limitations might prevent him from filing a new case raising the same claims.

The court also notes that the plaintiff chose to bring this lawsuit. He knew what the topic of the lawsuit was, and someone who files a lawsuit should expect that the people he sues might not see things the same way he does. The plaintiff says that reading the defendants' summary judgment triggered his trauma, so that he had panic attacks and psychotic episodes and attempted suicide. The court does not want the plaintiff to suffer. But the defendants have a right to defend against the plaintiff's claims.

In the alternative, the plaintiff asks the court to appoint a lawyer to represent him. He says that a lawyer would "ease some of the stress and psychological triggers that are the direct result of the ongoing reliving of past trauma from the rehashing of said events." Dkt. No. 36 at 2. In a civil case, the court has discretion to decide whether to recruit an attorney for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person must make a reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007).

In this district, the courts require a plaintiff to show that he contacted at least three attorneys in an effort to hire counsel on his own. A plaintiff must provide the court with the names of the attorneys he contacted as well as the dates of contact and copies of any letters the plaintiff received in response to the contact.

After the plaintiff makes that reasonable attempt to hire counsel, the court then decides "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff has not shown that he tried to contact three lawyers. The court understands that the plaintiff is in treatment and is struggling to manage his illness. But he was able to provide his response to this court. He ought to be able to write three letters to lawyers, asking them to help him. Even if the plaintiff had shown the court that he'd tried to find a lawyer on his own, however, the court would not appoint counsel to the plaintiff based on what he has represented in his motion. As the plaintiff might imagine, almost every inmate plaintiff asks the court to appoint a lawyer to represent him. The majority of inmate plaintiffs have no money, are not lawyers and don't have legal training. Many of them suffer from mental illness. There are not enough volunteer lawyers for the court to appoint one for every plaintiff who asks.

4

When the court does appoint a lawyer for an inmate plaintiff, is because the case has come to a point where the plaintiff needs to do more than file a written explanation of what happened to him. This case has not reached that point. At this point, if the plaintiff wants to respond to the motion for summary judgment, he may do so by submitting a written brief and any evidence he has that disputes the defendants' version of the facts (including his own unsworn declaration, which he may sign under 28 U.S.C. §1746). The court was able to understand the plaintiff's motion—it was clear and easy to read. The court is convinced that, barring any emotional or psychological barriers, the plaintiff can clearly and ably respond to the defendants' motion. If any of the plaintiff's claims survive summary judgment, the plaintiff may renew his request that the court appoint counsel to represent him for mediation or at trial.

Finally, the plaintiff suggests that "if the defendants through the court might be able to mediate a settlement that all parties involved might seem just and fair," he would be willing to participate. This court is willing to refer cases to magistrate judges for mediation if both sides agree. Of course, if the defendants indicate to the court that they are willing to participate in mediation, the court would be happy to refer the case to a magistrate judge for that purpose. The plaintiff should be aware, however, that even if the defendants agree, the magistrate judge may want to be sure that the plaintiff is sufficiently mentally and emotionally stable that he can participate meaningfully in a mediation.

The court is not going to dismiss the case, for the reasons explained above. Instead, the court will give the plaintiff an additional sixty days to file a response to the defendants' motion for summary judgment. If the plaintiff files his response by the deadline the court sets, the defendants may file their reply in support of their motion within the time frame the court set in the scheduling order. If the plaintiff does not file a response by the deadline the court sets, the court will consider whether to dismiss the case for failure to prosecute or rule on the motion for summary judgment on its merits without the plaintiff's input.

The court also notes, belatedly, that it never ruled on the defendants' motion for an extension of time to file the summary judgment motion. It rectifies that mistake here.

The court **GRANTS** the defendants' motion for an extension of time to file dispositive motions, *nunc pro tunc* to May 11, 2018. Dkt. No. 20.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's request in his August 3, 2018 filing that the court appoint counsel to represent him. Dkt. No. 36.

The court **ORDERS** that if the plaintiff wants to respond to the defendant's motion for summary judgment, he must file his response in time For the court to receive it by the end of the day on **Friday, February 15, 2019**.

Dated in Milwaukee, Wisconsin, this 17th day of December, 2018.

                                         **BY THE COURT:**

                                         _____
                                         HON. PAMELA PEPPER
                                         **United States District Judge**